Good morning, Your Honors. May it please the Court. My name is Mary Schultz. I represent the appellant, Frank Straub. I'd like to reserve eight minutes for... Okay. So the time showing on the clock is total time. Okay. So when it counts down to eight, if you want eight minutes, you need to stop. I'll go with that. Your Honors, we're requesting that a district court order granting summary judgment be reversed, and this matter remanded for trial. The grounds for reversal, summarily stated, are that the decision is bad law. It controverts this Ninth Circuit's Vannelli case, it controverts Cox, and it controverts the Brady v. Gebbe case, and it reverses the standard of summary judgment in construing the evidence in the record against the moving party. I want to just touch on three of the issues of law that arise in summary form for me. First, the district court held that there was no liberty interest actionable here because we'd shown no injury beyond reputation. But injury to reputation is a protected liberty interest because injury to reputation impairs the individual's ability to obtain future employment. It impairs an economic interest. And that is the holding of Vannelli, Cox, and Brady. So when the district court found that we had, in fact, evidenced injury to reputation, we proved that triggering and that actionable liberty interest. Second, the district court concluded that post-termination process is really all that's involved here. But publication, the initial publication, without notice and without an understanding of Vannelli. So when we demonstrated evidence that there had been no pre-publication process granted to former Chief Straub, we showed that initial deprivation, which is actionable under Vannelli. And that's, in fact, why the Vannelli and Brady both ultimately ended up going to the jury in each case, because there was an initial and an actionable deprivation. Third, the district court held that — Do you dispute that your client was offered a post-deprivation hearing on at least four occasions? We dispute that our — that my client was offered an opportunity to clear his name, yes. Well, wait a minute. When they keep offering you a post-termination hearing, how can you say that you are denied an opportunity to clear your name? Because an e-mail that says name-clearing hearing has never been held to constitute an opportunity to clear one's name. Well, that — counsel, I don't — if they've offered you an opportunity to have a name-clearing hearing and offered you an opportunity to structure that hearing, so they haven't described — they haven't prescribed what the precise contours of that hearing are going to be, and you've got an opportunity to help shape that, how can you say that it's not going to be effective? Because the word opportunity encompasses a lot, and at best — Well, but make sure you're remembering what Judge Bybee said, because my first idea was that you were offered this on at least four occasions, and then as I understand it, not only were you offered the opportunity at a hearing, but the opportunity to discuss the timing and the appropriate process for the hearing, which is embodied in his question. No such evidence in this record. None. No evidence? There's no such evidence that we were offered an ability to participate in timing, process, or an impartial hearing officer. Assuming that's the case, that's true, did you demand that or suggest that or in any way indicate that you were willing to proceed if, in fact, you were part of the process, creating the process? We challenged them as to what was being meant. Here was the problem. Chief Straub had no notice at any point of exactly what behavior he allegedly engaged in that made up these stigmatizing characterizations. He had asked the city, who said that the evidence was somewhere buried in someone's notes, and those notes were never produced. I asked, through letters to the city, I asked for the discharge order itself so that we could see, get some sense of what exactly was encompassed in these characterizations. The city refused to provide any notice of what Chief Straub had actually done. So offering a name-clearing hearing by an e-mail ... Did they get those letters? No. Did they say you've not seen those letters? Well, we've never seen the notes. The letters themselves, Judge, were, they were these characterizations, untruthfulness, misrepresentation of the mayor, conduct unbecoming, police chief. They were these characterizations. Chief Straub had originally asked, what exactly makes this up? And one of the city employees who was in the process of firing him said, well, it's in my notes. We requested those notes. We never got them. I continued to communicate with the city. Tell us exactly what he did. I mean, before we can have a hearing and respond, we have to know what the charges are. We have to have notice of what the charges are. I could not get a response out of them. On October the 8th, I filed a tort claim, a formal claim, basically saying the same thing. We don't know what he's done. Tell us what he's done, and we have a deprivation here. We did not get a response to the tort claim, even. We did get a response from a city insurer. A city insurer wrote us a letter and said, we're investigating this, and we'll let you know. We never got a response from the insurer, either. So to suggest that we can participate in a meaningful opportunity, i.e., a name-clearing hearing, when the city will not even divulge exactly— Well, counsel, by the time you get the letters from outside counsel for the city, they twice told you, once in November, once in December, that they were still willing to conduct such a hearing. Now, your unwillingness to respond to that, to tell them that you would like a hearing, it seems to me sort of precludes you or stops you from complaining that you didn't get all of the information on this. If you're not going to do the hearing, I don't know why the city is going to have to come forward with notes or the charges at this point, because it's way water under the bridge at that point. Because it's the government's burden. Because when— It's the government's burden to do what? It's the government's burden to provide due process. The government— Well, if they've offered you a hearing and you've declined it, what was the government supposed to do? Well, we really didn't decline it. I mean, this is where it gets in— Did you respond to those letters? I did respond to the letters. Did you tell them you would take them up on it? By the time the letters came from outside counsel, Your Honor, it was November. Right. The tort claim had been— That would have been, and that clearly would have been, a post-termination hearing. I understand that's not as satisfactory to you as a pre-termination hearing, but it is something. Did you take them up on that opportunity? I'll put it this way. We did not decline it. What the communication evidence is in the record is this does not seem to, it's me saying, this does not seem to be meaningful. Now, there is Ninth Circuit law out there that says that we do not have to participate, we don't have to request, nor do we have to participate in a name-clearing hearing that is purely a formality. This is why Brady went to trial. How do you know this is purely a formality? Because there was no notice of the charges. They asked you if you wanted a hearing. You told me that you, I mean, effectively, you told them no because you didn't respond that you wanted one, yes. So I don't know how, what they're supposed to do. We responded by saying, tell us what he did, first. Tell us what he did. Secondly, the process, all right? What is the process? I mean, essentially, Your Honor, what you're saying is as long as they say, call me, that's an opportunity for a name-clearing hearing. That's not the law. Well, it may not be an adequate hearing because, but if you call them and say, if we're going to have a hearing, I need to have the evidence. I'm going to have to be able to hear, see all the documentation that you've gotten that we haven't received thus far, and if they say, no, nothing doing, I think you've got a pretty good case for complaining that you didn't get due process. But if you don't ask for that stuff and give them an opportunity to provide it to you, I don't know why you can complain that you didn't get the process that was due. The law in the Ninth Circuit says that that is not a law. And the law is Vannelli? The law is Vannelli. It is and it is Brady. In Brady v. Gebbe, there, it actually went to trial as a question of fact as to whether the process that was being offered was indeed. If you had a trial, what would it have shown? Well, in Brady, what it showed is that that process was not a legitimate process, that there, and in Brady. What evidence would you have mustered at a trial about whether the city provided you with process? Well, I think what we would have mustered at trial would not be on the table at summary judgment. The evidence that we mustered at summary judgment was that there was no notice of, there was no apparent desire to give us notice of exactly what constituted the charges. Secondly, that there was no process that was being proffered at all. It was call me. Third, that there was no impartial tribunal, which is also a requirement of due process. Notice, process, and an impartial tribunal. In Brady, the impartiality of the tribunal is what was at issue. What did, what did you think? What were they offering you in terms of the impartiality? Well, no one. Well, what do you mean, no one? Well, because. You didn't answer their question, so how could you, how could you even, how, how, how do you know that they weren't offering you? There was no question posed to me. There was, you have been offered a name clearing hearing. The response back is, I'm not, is essentially, this is meaningless. What, what you're offering is meaningless. Now, I suppose you could take that as a question of fact. I suppose outside counsel could take that as, oh, well, we need to offer a process and an impartial hearing officer. Or they could simply say, aha, gotcha. Since you haven't responded back, you're now out. And the law does not support the latter. I just want to say that the only circuit, the only circuit that requires that an employee request and or participate in a name clearing hearing prior to bringing a due process claim is the fifth circuit. That's in Ray Craig. And that's because they have this seven elements test, where the requirement is actually built into one of their seven elements. But in Schleck, which is a case that was offered by the city and the mayor, that employee refused the name clearing hearing, outright refused it. And yet, it was the court's responsibility to go forward and assess the nature and the quality of what was being offered anyway. And the Schleck court found that it, that the process that was being offered, which was a C-31 hearing. What was actually being offered, or what could have been offered? What was actually offered. In Schleck. In this case, then how are we to define what it would look like? Without some response saying, well, we'll meet and these will be the, this is what we propose as the outline. How can any court or any jury, anybody, evaluate that? Because the government has to, comes forward and says, this is what we proposed. That's precisely what happened in Schleck. The government said- Because they didn't tell you who was going to preside at the name clearing hearing? The government has not satisfied its burden? No, because they didn't proffer anything. Even- Well, let's look at ER 300. I went there because you said there's nothing in the record that suggests that you were given the opportunity to discuss the timing and the appropriate process for the hearing. At ER 300, it says that, well, at least I read that to suggest that through council you were given the opportunity to discuss the timing and the appropriate process for the hearing. You said there's no evidence of that, but right, council suggested that that's something you could discuss. That's true, council suggested that there's something that we could discuss. Well, but not only something, but to discuss the timing and the appropriate process for the hearing. That's not a proffer of a constitutional process. So you're saying that record is deleted of any such evidence just because you don't interpret it that way? What we've- It seemed to me, council said, come and discuss the timing and the appropriate process we should do in this hearing. That's what at ER 300 it says. If council had said, please let me know as soon as possible so that you and I may discuss timing and a constitutional process, would that have been sufficient? No, there is no specific grid or list of qualities for what the government must propose. But what it must propose is a process and notice that meets constitutional adequacy. And this is an issue that has gone to juries, whether in fact, the process that we're talking about here, if the letter's going back and forth, whether there was indeed a good faith constitutional adequate process being offered. This is a question of fact. But isn't that implicit in Judge Bivey's question or in the statement that let's discuss the constitutional process? That says, let's sit down, figure out what is required, and we'll do it. Well, the letter didn't say, let's discuss the constitutional process. The letter said, call me, we'll talk. Well, the letter said, and I quote, discuss the timing and appropriate process for the hearing. Which is not a proffer of a constitutionally adequate process. The bottom line is- What would have been a proffer? What did they have to do? It's a question of fact. No, no, specifically. What do you say they should have done that they didn't do? And they wouldn't have done it had you met with them. There's- Two questions in one, but- There's a requirement that the government satisfy due process, because the government is the actor. So if- They know that. So the- What is it that you think they should have done so that you would have said that's sufficient to take this response to them? Pre-stigmatization notice, not posting letters on the Internet. After they posted letters on the Internet, perhaps producing the notes, saying here's the charges against you, let's have a hearing. We're going to provide for a C31 hearing under the Office of Administrative Hearings, like SLEC, you know, there's a variety of different mechanisms for the post-termination hearings, and they are literally offered in all of these cases. And they're different, in different cases? They're, in everything out there. Doesn't that suggest you have to sit down and try to iron out the details? No, what the law says is the government has to offer it. The government has to make clear what their process is, because they're in control of the process. Well, of course. But they can't understand without talking to you what you think your requirements are, and maybe they would have met those requirements. And I would speculate that they would not have? An employee does not have to accept or participate in an offer where it appears on the surface to be a mere formality. That's what we alleged here. We produced evidence to support that, and it should have gone to the jury as a question of fact. When you cut it off at the knees, counsel, I don't know how you can complain about the lack of process. Because if this letter had said, let's discuss timing and providing you with process and appropriate notice and an impartial decider, would that have been sufficient? How can it not be? If you're not willing to talk to them, I don't see how you get to complain. There is no way of finding that I was not willing to talk to them from this record. I was in communication with them throughout, including three-page letters, four-page letters, up until the filing of the tort claim, communicating with the insurer. I was in constant communication. The city would not respond with anything legitimate. Nothing legitimate. There was, call me, we'll figure it out, which is not constitutional adequacy as a matter of law. There was, we'll let you know what the charges might be without ever letting us knowing. Even as we sit here today, as I stand here today, the city has never identified the specific conduct that's being alleged under the umbrella of untruthfulness, et cetera, et cetera. Your Honor, my time is way up. I'm two minutes over. I will give you time for a rebuttal. Thank you. Police court, counsel, I'm Mike McMahon, the attorney for the city of Spokane. Counsel, are you arguing on behalf of everybody? I am not. I am arguing the city's position only. Okay. And I have reserved six minutes to do that. The remaining three defendants as individuals will parse out the remaining nine minutes as they like. Okay. So there are four of you planning on arguing today. I can't answer that for sure, because if there's no's behind me, then the answer is no. Okay. All right. All right. Let me go to what I think the guts of the case are. You've already covered this by virtue of your questions. And because I was a participant in the offers for name clearing hearing on two of the latter occasions after the city hired me as outside counsel, we shouldn't forget that the information of which the plaintiff complains was published on September 22nd. And on September 29th, in response to an email from Ms. Huffman, who suggested that the chief was no longer going to resign, she said, if he's not going to resign, then there'll be a termination and we hereby offer you a public name clearing hearing. There's been some recent cases that talk about the character of the dissemination may help form the basis of the hearing. So for instance, if you make a broadly public statement in the newspapers and television, there is some sensibility to allowing a public hearing if the employee so desires, so that they have an equal opportunity to respond. This is why I said, let's talk about the process. I get the due process is a moving target, particularly with respect to liberty interest claims. There is no property interest claim here. And the plaintiff continues to conflate the property interest requirements with the liberty interest requirements. She talks about charges. There are no charges because the entirety of the hearing is defined by the publication, which the plaintiff alleges contains defamatory or untrue statements. And so those are the things that would necessarily form the edges of what would be discussed in the hearing. But the courts have said repeatedly, particularly in strictly liberty interest cases, you must be guided by what happened in this case. We cannot formulate a hard and fast rule. We'll give you a three element, a four element, or a seven element test, depending on what particular circuit you happen to be sitting in. I go back to this court's ruling in Cox v. Roskilly, where this court ruled in 2004 that placing a document in the personnel file of a public employee is the necessary publication to trigger the right to a hearing. But it didn't solve, nor did it discuss, the timing issue. However, they relied on the 11th Circuit case of Buxton versus the city of Plant City, where they said, we like the reasoning of the court in the 11th Circuit of the city of Buxton. And we adopt this part of the decision, which is that if you put it into a public employee's file so that it's subject to recall by the Public Records Act, that's a publication. I'm suggesting to this court that if the court doesn't accept that because due process is a fluid place, and the offer of having a name clearing hearing and saying, let us sit down and determine the parameters, avoids many of the problems that exist in the cases that went up on appeal. Because the entity either said, you're not entitled to a hearing, and so failed in that regard, or provided a hearing that the plaintiff thought was inadequate. And so I thought of an elegant solution to suggest that the process should be worked out so there would be no questions later about whether the process was adequate or not. The question, I guess, is, is offering them a chance to work it out enough to fulfill the obligation that you must, under due process, provide? I believe it is, because it is. Because what? What case? I mean, my worry, I went through this and I said, okay, in my understanding here of, Straub was offered a hearing, maybe even offered this name clearing hearing as many as four times. And then I said to myself, well, just offering the hearing is not enough, so what else? And then I seized on this line, if you will, at ER 300, which said, and let's discuss timing and appropriate process. Yes. And so I said to myself, is that enough? I mean, I tried to find a case that would say that's enough. There isn't a case that says that's enough, but the proffer of hearing with process to be determined is not an unknown beast amongst the circuits that have delved into this. In fact, even going back to Paul versus Davis, the idea is that you can't know in advance so that you can describe a process with respect to a specific set of facts and disclosures that will not be subject to constitutional scrutiny later. So an open-ended offer to which the response was, it's too late to have a hearing because it can't be meaningful. That is the response we received four times in a row. We can't have a hearing because it can't be meaningful. And the response was not because the offer was inadequate. The response was because counsel believed that the resignation was, in fact, a termination. And so we haven't talked about the fourth element, which is in order for a liberty interest to kick in at all, you have to have a termination. Counsel, how could this not have been? It was surely a termination as police chief. It was termination of the position as police chief. There's no question about that. I mean, there's lots of mixed signals here. And I hope that the city is not under any illusions that this was modeled. This is a hot mess. And the city made a huge mess out of this whole thing. There's all kinds of misdirection and indirection here in the way that the city handled this. I have no idea what the substance of the charges are. I have no clue whatsoever. There are no charges, Your Honor. Well, but releasing the letters and the cotton memo later on and in the way you did really was unfair. There were a hundred different ways of handling this matter. If you thought that the charges were serious, then you should have just made them straight up. Giving him the opportunity to resign for family reasons and then saying in the next paragraph that there's all kinds of complaints against him that he hasn't seen and that we're not going to substantiate is really unfair. I understand that perception, Your Honor, I do. You may have, you know, I'm not going to predict how the panel is going to come out. Maybe you've done enough to offer him a post-termination hearing. But the city ought not to be under any illusions when you go back to Spokane that it handled this well. Understood. Understood. Are there any statutes or ordinances or regulations that I can look at to suggest what it is that one should do in this particular instance? There really are not. I didn't find any. That's why I'm putting it on you. There's not a, there's, there's many of the cases have arbitration clauses and union contracts. So for instance, Vanelli is such a case. As I understand it, based on my review of the record, there's nothing in this record to suggest what the defendants would have thought was appropriate. As to a hearing. And, and, and the reason is because Ms. Schultz, from the beginning of her representation, took the position that this was a unique case, a unicorn case, a unique set of facts. Our response to that was great. Let's craft a process that's satisfactory to you so that we can move forward with it. And that was offered within five days, even if you treat the publication as termination on September 22nd. On September 29th, even if it's treated as a post-termination hearing, case law supports that that closeness in time to the disclosure is constitutionally okay. So, Vanelli is not a helpful case because under the particular facts of that case, the Ninth Circuit struggled with that outcome by saying, in this case, because of the presentation in this case, and specifically saying in this case, we don't think that the post-termination hearing was constitutionally adequate because it was too far distant from the events which triggered the right to the, to the hearing. So you're now down to six minutes for, for your side. Do you want to cede time to the- I'll, I, I will, and I appreciate your honor's attention. Thank you. Thank you, Mr. McMahon. If it please the court, I'm here on behalf of Nancy Israelis, who was the city attorney at the time. You are Mr. Stewart? I am, yes, your honor. John Spencer Stewart. I'm going to be short. I don't think that I need to be long. I, it's, I very much appreciate the comments that the court has made. Both pro and con and so on and so forth. The issue here for an at will employment situation, which means that the employee can be terminated for any reason or no reason at all, has to do with the issue of whether or not this idea which, for which council has never provided us any authority, that there is some basis for a pre-publication, pre-termination hearing in connection with a liberty interest by somebody who is serving in an at will employment situation. There is no such case. Counsel, the idea that he was at will I think is pretty well established in the record. And that means that you could, you could do it for any reason and for no reason. When you choose to disclose defamatory reasons, then you may assume certain obligations here under the stigma plus test. That is, you could have simply fired the chief of police. You could have removed him. You could have told him that you wouldn't renew his contract at the end of the year. There were a half a dozen things that you could have done. But what you don't get to do is to kick him in the pants on his way out the door and slander him in front of the whole city without any opportunity for him to rebut the charges. No, and I don't take issue with that. My point is that basically he signed a contract and agreed to work in the city attorney's office. And he was represented by council at that time. And the fact of the matter is that as the balancing test in Matthews talks about, one of the things that's important for the city to be able to communicate to the constituency the reason the change is being made. This was not just some malicious comment made by one person. It was the belief of virtually every high ranking police officer and police man and woman in the city. And so in those situations on the basis of transparency, if not anything else, and the balancing test includes that, is that people understand why this was done. I wasn't- Was that information provided to the employee, to the chief? You say it was, every high ranking officer, was that provided? Eventually, Mr. McMahon would be the one to really answer that. I wasn't there, so I don't know what was furnished and what was not furnished. You're referring to the two memos. Yes, yes, yes. Yeah, the memos are not very specific. I mean, other than the use of profanity, I've got a pretty good idea as to what that was. I'm not sure what anything else meant. I understand. So the issue comes down to, is there any authority? Putting aside how it was done, and it may not have been handled as well as it could have been, and I understand that, and I don't necessarily dispute that. The issue comes down to, quite frankly, is this so-called idea that there's a pre-termination, pre-publication hearing. Is that something that's clearly established, or is it not? Is it beyond argument? Well, no. There's not one case, there is not one case, that counsel has brought to the attention of the city or brought to the attention of the federal district judge who decided this in Spokane, or to you, that suggests in an at-will situation, such as we have here, that they were required to provide him with notice before they disseminated that information and give him a chance to rebut. There isn't any. I think Ms. Schultz has moved past that in saying, okay, maybe conceded, maybe not, but she's now focusing on the post-termination hearing, and that it was not adequate. I believe that's where we are. There was no post-hearing situation. They offered several times, in writing, as Judge Bybee points out, and Judge Smith as well. No, I'm just saying that I think we've moved past that. I think Ms. Schultz has pretty much moved past that point. So the issue then becomes, if there is no case, and in fact, if you take a look at the record, you will find that Ms. Schultz conceded in the record that there was no authority, she had no authority with which to suggest that there was some sort of hearing before the change, I contend not termination, the change to being, it's the same salary, same benefits, and so on, in the city attorney's office. There's not one case, and she's. Councilor, you're down to a minute 20. Is anybody else going to talk? I'm done. I don't want to cut you off if you're going to continue, but it will come out of the time of the other council. Let me just finish with this. If you take a look at the transcript, and I know you have, and you take a look at what is discussed in the transcript and what the judge struggles with in the court below, he talks about the fact that page 46 of the transcript, what do you do with the hundreds of cases that allow post-termination defamation clearing hearings, question mark, without anything before that? And what the council defaults back to, and I just want to make this as clear as I can make it, the Vanelli case, which I remember the Brock team that was also lip-singing, that has nothing to do with this. That was a property interest case. It was not a termination at will. It was not an at will case at all. It was a totally different case. Brady, which is discussed in page 23 of our brief, is an entirely different situation. They had a hearing, and there was a finding of fact that the hearing was not satisfactory, and so forth and so on. We don't have that here. We don't have a hearing. And frankly, this was a setup. I understand we made mistakes. Every day we probably made twice as many this morning. Four times they offer to have a post-hearing to clear the name. Zip. Nothing. And if you listen carefully, and I know you did, and I was, to what the council says, it makes no sense. I mean, if in fact there was a serious belief that they wanted to clear the name of the chief, she would have taken that up. They would have determined what kind of a hearing it would be, and they would have had it. They didn't ever want that, in my opinion. And I would strongly urge the panel to affirm the court below. Thank you. Thank you. Thank you, Mr. Stewart. Ms. Schultz? Your Honors, Vannelli is a liberty interest and a property interest case. What counsel just talked about with respect to Vannelli, not requiring pre-stigmatization process is not correct. The other thing is, Your Honor, I'm not moved off my position that Vannelli requires a pre-publication hearing. That is my position, and that there is an initial violation if that does not occur. Even with an at-will employee? Yes. Vannelli had a contract. There was a contract involved in Vannelli, but the appellate court didn't review it that way. And it held, if you go through the Vannelli decision, it really is a blueprint of what occurred here. I do want to talk about ER 300, because I think this point, Your Honors, it nails exactly what I'm saying on the head. An offer to discuss process is not an offer of constitutionally adequate process. Well, the problem that I have with that argument is this. They offered to do it. There is no statute, regulation, or law which says what needs to be done. And you present none as to what they ought to do. And at that point, you didn't only not present anything to them as to what ought to be, but you haven't presented anything to us or to the district court as to what ought to be. You just, in a vacuum, say they didn't do more, as much as they ought to be, but I don't have to tell you what they needed to do. And there's no statute, law, or regulation which suggests, so I win. Well, Matthews, there isn't a statute, law, or regulation, because Matthews requires a balance to look at the facts. Well, the balance, I'm having a tough time when I don't even know what you want. To look at the- Or what you need. Or I don't have a case which would suggest in this particular interest what needed to be done. Vannelli, Brady, and Cox. Okay, if I can't find it in Vannelli, you lose. What I'm saying, you're, well, you'll find it in Vannelli. Well, your idea is that I will. I'm saying, what if I don't agree? Do you lose? Well, there's always room for disagreement, but I still win because Matthews requires a balance, and that's the question of fact. But when we get to Matthews' counsel, we're always doing this post hoc. We're always saying, did you do what was constitutionally required, given the contours of the right and the interests at stake? There's a government interest, there's a private interest, risk of erroneous deprivation. We don't have anything here. And if they hadn't offered you any hearing at all, you would have a very strong argument. But when they've said, let's get together and talk about a hearing that we could hold for your client, and you won't talk about it, how do we get to judge whether that was constitutionally adequate? Of course there wasn't a hearing, because you refused to have a hearing. I will respectfully disagree again. I did not refuse. I challenged them. I used the phrase specifically. I said, in essence, I don't believe you that this is any sort of meaningful process that you're offering. Why? Not because I was talking about unicorns. Because I said, this is a hatchet job. What you are doing to this person is a hatchet job. Now, when you start with that, and you- It may have been a hatchet job, but how do we know that? You may have sincere belief that it was a hatchet job, but without taking it to the next step, I believe this is an inadequate process or offer, but let's talk about it. Here's what I demand, or here's what I think is appropriate. Without taking that second step, Judge Biby says, how do we evaluate whether it would or would not have been adequate? If the Court chooses to impose- First of all, I think the record read in a light most favorable to the appellant or to the nonmoving party shows that this was a hatchet job for a variety of reasons, one being that there was no reason to release the letters. However- It was clearly a ham-handed operation. But Mr. McMahon sends you a letter and says, do you want a hearing? Let's talk about it. And you didn't call Mr. McMahon and say, I will be interested if I can get the right kind of hearing. What are you proposing? I did not respond in those words. We already, however, had the tort claim in process. We had gone beyond for weeks. What are the charges- So I would put it, I would say that what happened is this. If you want to say that there was a four times offer, there was a four times response that was a challenge, tell me. Tell me what you mean. And there was no response back. Now, whether that is an offer and a refusal, I believe is a question of fact construed in a light most favorable to Chief Straub. And that we need to go to a jury to put you and Mr. McMahon on the stand to decide and have the jury decide which of you they think is credible, whether their offer really was genuine and whether you really declined this? Is that where we are? No. The letters speak for themselves. And there wouldn't be anything we'd be able to add to the letters in any event. So- Then how do we know that this was not a genuine offer from the city? Because the city hasn't shown that it was. Well, they've given us a letter. They gave us a letter from Mr. McMahon. Now, if we're not going to put Mr. McMahon on the stand to ask him whether he really believed what he was writing to you, and we're not going to put you on the stand to say, I talked with Mr. McMahon and he was laughing the whole time that I spoke with him, so I knew he wasn't really serious about this, then we'd have all the record we're going to have. The offer to discuss process, to discuss process, is not an offer of process. But you're saying it was a bluff. And that's how I look at it, it's coming to my mind. They were bluffing. They really didn't mean what they said in the letter. Is that your point? As Brady put it, it is a- Is that your point, that it was just, they were bluffing? It's a mere formality. Now, were they bluffing? They put it out there. Were they bluffing about it? Were they not really serious about it? Something that is a mere formality, yes, is a bluff. What do you do when someone is bluffing? Well, we file the tort claim. Call the bluff, don't you? Isn't that the moment of reaction? Someone bluffing? See, I don't think the person's being serious. He's trying to bluff me. Call the bluff. Well, Your Honor, there's things that we could have done, but what we did do is to communicate relentlessly to challenge what was happening with the city because of the nature and circumstances of what had already occurred, which to us demonstrated bad faith. And there is a summary judgment standard that requires that this course of communication be taken in a light most favorable to us. And what I'm saying in those letters is, tell me, show me, what do you mean, time after time after time, tell me. And we, to this day, we have no response. So from a court standpoint, is that a constitutionally adequate showing of post-termination process? Last point I want to make, I think that essentially, even if there was a refusal, an outright refusal, which I do not concede that there was by any stretch, even if Matthews still requires the balance, was the violation so egregious in what they did on September 22nd, September 21st and 22nd, was that violation so egregious that it would not, in this instance, have been mitigated by or cured by, as one of the cases said, what was being offered post-termination. You can't get away from that balance, that required balance, even if there is a refusal. So holding that there's an estoppel would be in direct contravention of Matthews. And that is the Supreme Court's law. This has to be balanced. Okay, thank you, Counsel. Thank you, Your Honors. Thank you, Counsel, for the argument. Straub v. City of Spokane is ordered submitted.
judges: Bybee, N.R. Smith, Huck